IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

FRANKIE N. WALKER SR.,
    Plaintiff,

v.                                     Case No._____

GREGORY SCOTT, Program Director,
JAMES DIMAS, Department of Human Services,
SECRETARY DESIGNATE.
Liberty Health Care Corporation (LHC)
    Defendants.

TITLE 42 U.S.C. § 1983
CIVIL RIGHTS COMPLAINT
WITH JURY DEMAND

INTRODUCTION

**THIS IS A CIVIL RIGHTS COMPLAINT** filed by the Plaintiff, Frankie N. Walker for Compensatory and Punitive Damages and Injunctive Relief, pursuant to 42 U.S.C. § 1983 and in accordance with United States Supreme Court case law, Monell v. Department of Social Services, 436 U.S. 658, 690, 98 S.Ct. 2018 (1978) and federal case law establishing "municipal liability" for the "ongoing" and continuous violation of constitutional rights pursuant to an "official policy" and/or other "governmental customs" that is the moving force behind the deprivation of constitutional rights, see Estate of Sims v. Cnty. of Bureau, 506 F.3d 509, 514 (7th Cir. 2007) quoting City of Canton v. Harris, 489 U.S. 378, 389, 109 S.Ct. 1197 (1989) that constitutes the Defendants being "deliberately indifferent" to the Plaintiff's alleged mental health needs in a number of ways and violating the Fourteenth Amendment to the United States Constitution for maintaining policies and customs of "deliberate indifference," "creation and customary usage of a "polygraph device" despite their awareness of these devices being "inherently defective" and providing "no" reliable way to confirm polygraph test's results and further violating the Plaintiff's rights as well as others that are similarly situated and required to sit and be examined by a polygraph device.

## JURISDICTION

1. The District Court has jurisdiction over the Plaintiff's claims of violation of Federal Constitutional Rights under 28 U.S.C. § 1331(a).

## PARTIES

2. Plaintiff, Frankie N. Walker Sr., is involuntarily confined within the walls and serpentine wire of Illinois Department of Human Services-Treatment and Detention Facility (DHS) located at 17019 County Farm Road, Rushville, Illinois 62681. The Plaintiff was confined at (DHS) in February 2007 and such confinement has continued without any breaks up until the present (2018). At all relevant times during these events described in this complaint the Plaintiff has been incarcerated at (DHS);

3. Liberty Health Care Corporation (LHC) "Herbert Caskey" located at 401 E. City Ave., Ste. 820, Bala Cynwyd, PA. 19004, is an out of state corporation whom has been contracted by (DHS) the State of Illinois, to administer sex offender specific treatment to Residents such as the Plaintiff. At all relevant times during the events described in this complaint (LHC) has been the treatment providers at (DHS) and is sued in both their Individual and Official Capacity;

4. Defendant Gregg Scott, the Program Director, at (DHS) is located at 17019 County Farm Road, Rushville, Illinois 62681, was employed at (DHS) during the described acts, omissions being described in this complaint and is sued in his Individual and Official Capacity;

5. Defendant James Dimas (DHS) Secretary Designate, located at 401 South Clinton Street, Chicago, Illinois 60607, is presently (DHS) Secretary Designate and based on information and belief succeeded previous (DHS) Secretary Designate, Gregory M. Bassi, and is being sued in his Individual and Official Capacity.

## LITIGATION HISTORY

6. No other law suits have been brought in state or federal court dealing with these same set of facts.

7. No law suits were brought during the Plaintiff's incarceration at (D.O.C.) but since the arrival at (DHS) the Plaintiff has brought approx. (7) lawsuits.

8. The facts as stated are the results of a continuing violation.

(2)

9. A description of those lawsuits are as follow: Walker v. Vaughn, et al., Case No. 07-cv-869, filed In United States District Court of Southern Illinois; Walker v. Groot and Schostak, Case No. 11-3033, filed In The United States District Court of Central Illinois; Walker v. Phillips, et al., Case No. 12-cv-3297, filed In The United States District Court of Central Illinois; Walker v. Jumper, et al., Case No. 13-3079, filed In The United States District Court of Central Illinois; Walker v. Williams, et al., Case No. 13-3358, filed In The United States District Court of Central Illinois; Walker v. Dimas, et al., Case No. 16-4009, filed In The United States District Court of Central Illinois. The Plaintiff was also, Co-Plaintiff, in Adams et al., v. SCott, et al., Case No. 14-3338 and requested to be removed as a party, after it was filed In The United States District Court of Central Illinois. In Walker v. Vaughn, et al., the claims were deliberate indifference to medical needs; In Walker v. Groot and Schostak, the claims were a violation of free speech, retaliation and denial of due process; In Walker v. Phillips, et al., the claims were use of excessive force and a violation of due process; In Walker v. Jumper, et al., the claims are deliberate indifference to alleged psychological needs; In Walker v. Williams, et al., the claims were violation of the First Amendment and due process; In Walker v. Dimas, et al, the claims are First Amendment retaliation and denial of due process and; In Adams et al., v. Scott et al., the claims were First Amendment, denial of religious rights.

10. The disposition of these claims in this section are as follows: Walker v. Vaughn, was dismissed without prejudiced; Walker v. Schostak and Groot, was lost on appeal; Walker v. Phillips, et al., was resolved on summary judgment in the Defendants' favor; Walker v. Jumper, et al., is pending on appeal; Walker v. Williams et al., is on appeal; Walker v. Dimas, is presently in summary judgment and; Adams et al v. Scott, et al., based on information and belief was dismissed without prejudice.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. Yes, there is an "imitation" grievance system.
12. There were "some" grievances (Attempt To Resolve) filed regarding the acts, omissions and events of the defendants named in this complaint.
13. The Plaintiff attempted to resolve certain matters by filing grievances and was unsuccessful. Excuses were made for the behaviors of the defendant by the grievance examiner. Additionally, the grievance examiner, communicated false information to the Plaintiff, intending to "cover up" for the defendant's behavior. The Court should take notice that the Plaintiff is not in prison, not obligated under (PLRA) and not required to file grievances.

(3)

STATEMENT OF FACTS

14. The Plaintiff has been involuntarily civilly committed at (DHS) without any breaks since February 2007 to the present (2018), a total of eleven (11) years.

15. After the Plaintiff was involuntarily committed in July 2008, as a result of counsel in state court incompetence, Plaintiff requested that he be allowed to represent himself and it was allowed.

16. The Plaintiff since August 2009, to the present (2018) has been solely responsible for conducting his own defense, in proceedings under the Sexually Violent Persons Commitment Act (SVPCA).

17. Plaintiff participated in "sex offender specific treatment" (Core Group) from approximately June/July 2008 until June/July 2010 and after, suspicious behaviors of a Polygrapher and negative test results, eluding to the Plaintiff being dishonest during the taking of a Polygraph test, Plaintiff withdrew from treatment to pursue (polygraph appeal) the details of which are set forth in Walker v. Jumper(Pennock) et al., Case No.13-3079, Appeal No.17-2596; Defendant Sandra Simpson, the Grievance Examiner, as named in the "present" cause of actIon, is named in Walker v. Jumper, et al., as well.

18. Defendant Sandra Simpson's acts and omissions in Walker v. Jumper, as well as in the present cause of action, were employed for the purpose of being, "intentionally misleading and deceptive" and further carried out, to "conceal" Defendant Kerryann Hughes's, the former mail carrier (Storekeeper's) having taken and destroyed the Plaintiff's (Petition For Declaratory Judgment And Injunctive Relief With Waiver of Summons) "petition" requested by Plaintiff to be processed as (Certified Mail With Return Receipt) and mailed to former DHS Secretary-Designate, Gregory M. Bassi, at the time of these occurrences and events based on information and beliefs. See (Exhibit C).

19. Plaintiff, sought Declaratory Judgment and Injunctive Relief, in the underlying "State" court proceedings under the (SVPCA) seeking to have "The Circuit Court of The Nineteenth Judicial Circuit, Lake County, Illinois," enter an order making a "declaration" pursuant to 735 ILCS 5/2-701, Illinois Civil Code of Civil Procedure (State Law) delineating the Department of Human Services-Treatment and Detention Facility (DHS) and its contractors obligatory duties, as ascertained from the then existing contract between the Polygrapher and the (POLYGRAPH REFERRAL, QUALITY ASSURANCE AND APPEAL PROCEDURES, Liberty Health Care/IDHS, November 2006, Exhibit A) affirmatively, setting forth and

(4)

describing the Plaintiff's rights emanating from DHS, state contractors and Liberty Health Care (LHC) "collectively" the State's use of the polygraph device in dispensation of sex offender specific treatment and further use of inconclusive or deceptive results of a polygraphs, to prevent progress in treatment and inevitably, Plaintiff's release from (DHS) and "enjoin" DHS, state contractors, collectively, the State, pursuant to 735 ILCS 5/11-102 State Law) from referencing (March 02, 2008's) Polygraph results in reports, using to thwart progress in treatment or to harm, injure, be of detriment or prolong Plaintiff's confinement at DHS.

20. A seemingly failed polygraph, it is customary practice of keeping the Plaintiff in the lower phases of treatment and constitute "insufficient" progress in treatment, requiring DHS's contractors to submit a report, documenting Plaintiff's lack of progress in treatment. See 725 ILCS 207/55(a)(1) stating in relevant part, "...the Department shall submit a written report to the court...at least every 12 months after an initial commitment under Section 40 for the purpose of determining whether: the person has made sufficient progress in treatment to be conditionally released...."

21. DHS, a State Agency, "does not" guarantee an assured course of redress of polygraph test results and have systematically designed a procedural "scheme" that has a circular function that is initiated by state agents via the polygrapher administering Plaintiff a polygraph (March 02, 2010), sabotag- the test's results and after being discovered, refusing to turn over "all" documentation whether digitally and/or electronically, recorded and computer stored and/or the State is ordered directly in state court proceedings to turn over "all" documents related to the test and the State consciously withholding and refusing to turn over documentation in its proper form or in medium requested so that results of polygraph test could be professionally reviewed for its veracity and accuracy.

22. Without DHS (the State) offering and guaranteeing an "unobstructed" and assured way, to check the methodologies of polygraphers and the accuracy and veracity of polygraph test, a seemingly failed polygraph test becomes a weapon of warfare, which when employed by the State, Clinical Therapists and its contractors, neutralizes a person victimized by it, as the Plaintiff, immobilizing the person in this God foresaken place, isolated from society and shouting range of our communities, to be at the mercy of our captor.

23. As a result of a "semingly" failed polygraph test, the Plaintiff was stuck between Phase 2 and 3 of a "five" phase sex offender program for seven (7) years and approximately (2) months, during which time the State argued in "state" court proceedings Plaintiff had not made sufficient progress in treatment to be released and by virtue of doing so creating an impenetrable block to the Plaintiff obtaining his liberty and making certain extended incarceration and punishment without obtaining a lawful conviction of a present crime and being sentenced in accordance with the law and ultimately, a clandestine way of circumventing due process.

24. As a result treatment for the Plaintiff, at (DHS) for the passed seven (7) years up until August 2017, has been a "cycle" of recommendations to "ancillary" groups (Power To Change) and "repetitive" focus time when attending treatment groups, which resulted in the processing of the same material (over and over) again, "past crimes and incidents occurring close to (30) years ago" concluding with "resident" group members and therapists harassing and badgering the Plaintiff and in so many words calling the Plaintiff a liar and insisting the Plaintiff make certain admissions and/or adopt "their" definitions of a "sex offense," when in accordance with (State Law) 720 ILCS 5/2-12, the word "offense" means violation of any penal statute of this state and it is the legislature (Generally Assembly's) domain to "enact statutory law," NOT DHS, or state contractors. IL.Const.Art. 4, § 1.

25. The resolution of the aforementioned in its entirety, is what necessitated Plaintiff's "access to state courts," as well as, during this entire time, August 2009 to the present, the Plaintiff has been solely responsible for the presentation of a defense in proceedings under the (SVPCA) and preserving issues for appellate review in the state appellate courts.

26. The Plaintiff was required to serve upon DHS, the "Respondent" in matters related to Plaintiff's "Petition For Declaratory Judgment...." copies of the petition/request for waiver of summons, which initially, was done May 2015, therewith, Plaintiff requested it be processed as (Certified Mail With Return Receipt) by Defendant Kerryann Hughes, former mail carrier at (DHS). The Plaintiff did not receive the requested receipt, consistent with request that the "petition" be processed as certified mail and after a passing of three (3) days begin to question the Defendant concerning the whereabouts of the "return receipt."

28. After weeks passing, grievances or an (ATR) Attempt To Resolve, was filed regarding the matter and the Grievance Examiner, Defendant Sandra Simpson, communicated to the Plaintiff, "due to an oversight your letter was not sent by certified mail, you were charged regular postage. You were charged for 1st Class Mail because the letter was mailed." Based on this assertion by Defendant Simpson, Plaintiff placed confidence in this Defendant's communication and moved the litigation in state court forward. Defendant Simpson's reference to the Plaintiff's "petition" as a (letter) is her own, The envelope given to Defendant Kerryann Hughes, on May 27-28, 2015, contained Plaintiff's "Petition For Declaratory Judgment and Injunctive Relief With Request For Waiver of Summons."

29. A copy of the "petition" was also provided the Assistant Attorney General in proceedings in state court under the (SVPCA) and on or around September 2015, an order was entered in state court proceedings "that DHS was considered served for purposes of the Petition For Declaratory Judgment."

30. DHS "contested" the state courts order affirming services and several motions, responses, a reply and numerous proceedings ensued into late February 2016.

31. May 2015, September 2015 and October 2015, a total of three (3) times, the Plaintiff attempted services on (DHS) in various ways regarding the "Petition For Declartory Judgment and Injunctive Relief." DHS contended, however, there was improper services and a state court entered an order, on or around about (February 24, 2016) "vacating its previous order considering DHS to have been served for purposes of the Petiton For Declaratory Judgment and Injunctive Relief" requiring the Plaintiff to begin the process of attempting the serve DHS over.

32. Plaintiff in the "final" week of (February 2016) received from the mailroom documentation that the Petition For Declaratory Judgment and Injunctive Relief, "had" been mailed as certified mail with return receipt in May 2015, which was "inconsistent" with what Defendant Simpson, previously conveyed to the Plaintiff in an (ATR) response in (June 2015) and was a "deliberate" act taken by the Defendants to mislead the Plaintiff and lull Plaintiff into "inaction" and prevent discovery of Defendants' wrongful actions and conduct designed to deny Plaintiff access to the courts. The subsequent documentation received by the Plaintiff from the mailroom, suggesting Plaintiff's "petition" was mailed certified mail with return receipt, in May 2015, evidenced Defendant Hughes and Simpson, foreknowledge of communicating falsely to the Plaintiff to delay court actions and facts surrounding the Defendants' actions were

unknown to Plaintiff at the time and as a result, Plaintiff relied on the misrepresentations, allowing (4 to 5) months to elapse without attempting further service on DHS. Defendant Simpson, having been formerly named a Defendant in an "identical" matter, <u>Walker v. Jumper, et al.</u>, did know from her falsely communicating "the petition had been mailed," the Plaintiff would trust in her having investigated the matter, contacting the mailroom, Defendant Hughes, other storekeepers to obtain the necessary information surrounding the specific documentation and the Defendants' representation being consistent with the obvious, evidence no receipt had been returned to the Plaintiff, would be relied on and "was relied on by the Plaintiff," otherwise, Plaintiff's earlier actions in state court (providing the Assistant Attorney General with a copy of the petition) was no more than a forewarning telling of events to come, instead of a courtesy copy making the Assistant Attorney General aware of the start and necessity of dual proceedings, designed to ascertain the Plaintiff's rights related to polygraph tests conducted by DHS, obtain reliable documentation (test results) connected to polygraph exams conducted by DHS and/or prohibit reference to polygraph tests results in related (SVP) proceedings, annual evaluation reports and by DHS therapists, referring to the test's results as reasons for impeding "progress in sex offender specific treatment" consistent with § 55 of (SVPCA), which is an objective sought by the Plaintiff in state court since (2010).

<u>Policies of Deliberate Indifference:</u>

33.    Plaintiff, adopts by reference the statements, assertions and allegations in (Paragraphs: 17, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28 29, 30, 31, 32) as if fully set forth here and further states, asserts and alleges the following:

34.    Attached are (Exhibit A, POLYGRAPH REFERRAL, QUALITY ASSURANCE AND APPEAL PROCEDURES, Liberty Health Care/IDHS, November 2006) and (Exhibit B, POLYGRAPH REFERRAL, QUALITY ASSURANCE AND APPEAL PROCEDURES, Liberty Health Care/IDHS, November 2006,"Revised March 2010") "expressed policies being enforced by DHS and its contractors" (LHC) in violation of the constitution.

35.    (Exhibits A and B) are, to begin with, policies of "deliberate indifference" because polygraph devices are "inherently defective."

36.    (Exhibits A and B) polygraph appeal policies, practices and procedures, continue to be policies of "deliberate indifference" because historically, the results of polygraph test have proven to be unreliable.

37.    (Exhibits A and B) additionally, fail systematically, when there is an attempt to enforce their provisions (obtain computer stored information in a similar medium these polygraph test are recorded) resulting in years of under-

(8)

going abject and degrading tests and discussions in deprivation of due process guarantees that assure the Plaintiff that any proceedings accorded finality has to conform and be in harmony with due process, which is to provide notice and an opportunity to be heard in a reasonable time and a reasonable manner which (Exhibits A and B) "do not" provide for, once the policies' procedures and provisions are invoked, denying "timely" ascertainment of the validity of the test's results and the propriety of the tester's methods used, amounting to policy of deliberate indifference.

38.     The State, DHS, Defendant Gregg Scott and Liberty Health Care, have been informed and therefore, are aware polygraph devices are inherently defective, been historically been determined to be unreliable, the past and present polygraph practices, policies and procedures employed to obtain necessary documentation in connection to results of polygraph test, in a reliable medium is severely broken and that their "subjective" awareness constitutes deliberate indifference.

39.     Plaintiff adopts by reference, the statements, assertions and allegations in (Paragraph 38) and further states, asserts and alleges, the State, DHS, Defendant Gregg Scott and Liberty Health Care Corporation (Employee Therapists) are aware that residents are involuntarily confined pursuant to a "state court order," "...the person to be committed to the custody of the Department for control, care and treatment until such time as the person is no longer a sexually violent person." 725 ILCS 207/40(a). The "inherent defect," the unreliableness and unenforceable policies, practices and procedures (Exhibit A and B) can potentially, and has for the Plaintiff, increased and/or multiplied that time exponentially, warranting or justifying "treatment" and involuntary confinement at DHS for an alleged mental disorder and dangerousness and as a result, establish the Defendants "objective" awareness of deliberate indifference. See (Exhibit D).

40.     (Exhibits A and B) are policies and regulations officially adapted by and promulgated by DHS's officials. Defendant Gregg Scott, is DHS-TDF's final policymaker, but assigns policymaking authority, additionally, to the Clinical Director, for creating and implementing policies related to treatment.

41.     DHS also, employs and utilizes a panel of "unqualified" clinicians to serve as a Polygraph Review Committee (PRC) claiming to possess the professional ability to "read and interpret" the results of polygraph test, an unofficial practice and custom that has been condoned by DHS's policymakers and results from deficient staffing and training of qualified personnel and constitutes a training deficiency and a policy of deliberate indifference.

(9)

## POLYGRAPH POLICIES AND PRACTICES
### CUSTOMS AND USAGE AMOUNTING TO
### DELIBERATE INDIFFERENCE

42. Defendants James Dimas and Greggory Scott, DHS's final policy makers maintain and enforce "policies" and "customs" that constitute deliberate indifference when adapting and promulgating policies, practices and the customary use of a polygraph device: a) inherently defective; b) historically known to render unreliable results; c) knowingly establishing and maintaining policies and polygraph appeal procedures that fail systematically when there is an attempt to invoke and/or enforce its provisions regarding appeal of a polygraph exam and; d) employing a panel of clinical therapist as a Polygraph Review Committee (PRC) passing themselves off as possessing ability to read and interpret results of polygraph test when neither therapist is a qualified licensed polygrapher and deny Plaintiff rights protected by the Fourteenth Amendment to the United States Constituion.

### RELIEF REQUESTED

43. Compensatory damages from each named Defendant.
44. Punitive damages from each of the named Defendants.
45. Injunctive relief: enjoining Defendants DHS, James Dimas and Greg Scott, from the unlawful use of "inherently defective" polygraph devices, known to render "unreliable" results or establish "reliable" policies that assure the "timely" production of computer stored documentation related to polygraph test in similar medium as recorded and employ qualified people on (PRC) or stop use.

Plaintiff declares under penalty of perjury pursuant to 28 U.S.C. Z 1746 that the foregoing is true and correct, except that which is based on infor--mation and belief and for those matters verily believes the same.

Respectfully submitted,
*Frankie N. Walker Sr.*
Frankie N. Walker Sr.,
In pro se
Department of Human Services
17019 County Farm Road
Rushville, Il. 62681

(10)